FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 23, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER RALENE N., | NO: 2:17-CV-00154-FVS |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12 and 16. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney Dana Madsen. The defendant is represented by Special Assistant United States Attorney Daphne Banay. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the

ORDER ~ 1

court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 16, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12.

## JURISDICTION

Plaintiff Jennifer Ralene N. protectively filed for supplemental security income and disability insurance benefits on August 22, 2013. Tr. 166-81. Plaintiff alleged an onset date of February 7, 2013. Tr. 166, 173. Benefits were denied initially (Tr. 115-18) and upon reconsideration (Tr. 119-25). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Marie Palachuk on December 9, 2015. Tr. 41-76. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits (Tr. 17-39) and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

Plaintiff was 38 years old at the time of the hearing. Tr. 56. She testified that she got to twelfth grade and has her GED. Tr. 57. She is divorced with two teenaged children who do not live with her. Tr. 57. Plaintiff has work history as a housekeeper, cashier, fast food worker, and cafeteria helper. Tr. 57-59, 70-71.

She testified that she left her cashier job in 2012 due to high blood pressure; and was fired from her last job as a housekeeper in 2014 for being too slow due to trouble breathing. Tr. 57-59.

In July 2013 Plaintiff was hospitalized for a suicide attempt. Tr. 60, 258. Plaintiff testified she feels depressed and has anxiety. Tr. 60. She reported sleeping 12 hours a day and taking a nap in the afternoon anywhere from 20 minutes to three hours. Tr. 61. She reported shortness of breath; pain in her back, right hip, and right leg; chest pain; and headaches. Tr. 61-62, 65. Plaintiff testified she can walk a couple of blocks; stand for 15-20 minutes; has trouble bending and squatting; and can lift or carry 10-15 pounds. Tr. 44-45, 48-50. Plaintiff alleges disability due to depression, bipolar, anxiety, and PTSD. *See* Tr. 122.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  If the evidence in the record "is

susceptible to more than one rational interpretation, [the court] must uphold the

ALJ's findings if they are supported by inferences reasonably drawn from the

record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The

party appealing the ALJ's decision generally bears the burden of establishing that

it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that she is not only unable to do his previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 7, 2013, the alleged onset date. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairments: cyclothymic disorder

vs. bipolar disorder; posttraumatic stress disorder (PTSD); diabetes mellitus; hypertension; chronic obstructive pulmonary disease; and obesity. Tr. 22. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 28. The ALJ then found that Plaintiff has the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). She is able to understand, remember, and carry out simple, routine, and repetitive instructions and able to maintain attention/concentration for two-hour intervals between regularly scheduled breaks. She should have no public interaction and interaction with coworkers should be limited to no more than small groups of familiar coworkers.

Tr. 29. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 33. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 34. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 7, 2013, through the date of the decision. Tr. 35.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ improperly discredited Plaintiff's symptom claims; and

2.  Whether the ALJ properly weighed the medical opinion evidence.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ initially found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's "assertion of total disability under the Social Security Act is not supported by the weight of the evidence." Tr. 30. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*,

885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant

factor in determining the severity of a claimant's pain and its disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Plaintiff argues the ALJ

improperly focuses on Plaintiff's "intermittent disclosures of lesser symptoms on

some issues while increased symptoms on other issues[;]" which Plaintiff contends

"merely show an earnest disclosure of a snapshot of her symptoms on the date she

was asked rather than a trend of one symptom resolving after another." ECF No.

12 at 10. In support of this argument, Plaintiff cites a single treatment note from

October 2013, and contends that the "ALJ inexplicably found [Plaintiff's]

disclosure of improved mood to be credible while disbelieving her disclosure that

she continued to suffer from anxiety." Id.; Tr. 278. However, the ALJ's decision

relied on Plaintiff's own reports that she was "doing better overall;" and, as noted

by Defendant, the ALJ specifically acknowledged that Plaintiff continued to report

anxiety, but correctly noted that anxiety "was not observed on the exam that day."

ECF No. 16 at 5-6; Tr. 31, 278. Moreover, the ALJ set out, in detail, the medical

evidence contradicting Plaintiff's claims of disabling limitations. Tr. 23-27, 30-31.

For example, despite alleging an onset date of February 7, 2013, the earliest

medical record provided was from her hospitalization in July 2013; and despite

testimony at the hearing that she had mental health treatment at Hiawatha

Behavioral Health from 2013-2015, "no records of this were provided, despite

counsel being specifically asked about these records at the hearing." Tr. 30-31, 55, 258; *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor). Moreover, as noted by the ALJ, Plaintiff's mental health conditions were consistently reported as stable on medication; mental status exams were "repeatedly reported as being 'grossly normal' with no observations of the mental health symptoms she testified to at the hearing;" and "no mental health issues are even discussed in the Chippewa and the CHAS records, even though she was seen regularly throughout 2014 and 2015." Tr. 31 (citing Tr. 316-37, 345, 350-51, 355, 358, 366, 375, 385). Finally, the ALJ noted that objective physical findings included: intermittent musculoskeletal tenderness; some abdominal tenderness; one observation of decreased muscle strength/tone in her neck; normal pulmonary function test in May 2014; normal heart catheterization; and controlled blood pressure when on medication. Tr. 31, 324, 328, 345, 358, 365, 375, 382, 384.

Thus, regardless of evidence that could be interpreted more favorably to the Plaintiff, the ALJ properly relied on evidence supporting his finding that Plaintiff's assertion of total disability is not supported by the weight of the evidence. Tr. 30; *See Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a

credibility determination … [t]he ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains."); *Burch*, 400 F.3d at 679 ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").  The lack of corroboration of Plaintiff's claimed limitations by the medical evidence, was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.[1]

Second, the ALJ found "non-compliance of [Plaintiff] is evident throughout this record, including stopping medications, not taking them as prescribed, and not following through with treatment recommendations."  Tr. 31.  Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  However, an ALJ "will not find an individual's symptoms inconsistent

---

[1] Plaintiff additionally argues that "[b]ecause the ALJ's other grounds upon with the credibility determination is based is flawed, this reason cannot stand alone."  ECF No. 12 at 10.  However, as discussed herein, this reason does not "stand alone" because the ALJ's ultimate rejection of Plaintiff's symptom claims is supported by substantial evidence.

with the evidence in the record on this basis without considering possible reasons

he or she may not comply with treatment or seek treatment consistent with the

degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9

(March 16, 2016), *available at* 2016 WL 1119029. In support of this finding, the

ALJ cites four specific records, each of which are individually challenged by

Plaintiff. ECF No. 12 at 10-12. First, in support of this finding, the ALJ cited

Plaintiff's report that she did not take her blood pressure for 2 days because she

"forgot." Tr. 25, 323. Plaintiff argues the ALJ failed to consider that Plaintiff self-

reported memory issues and reliance on others to remind her to take medication.

ECF No. 12 at 11 (citing Tr. 216, 219). However, as noted by Defendant, the ALJ

specifically considered, and discounted, Plaintiff's self-report that she needed

reminders to take medication because it was inconsistent with her activities (Tr.

31), and the ALJ relied on medical expert Dr. McKnight's testimony that

Plaintiff's claims she cannot remember her medication is inconsistent with

"repeated references to follow up visits where no psychological factors were

observed" (Tr. 26). ECF No. 16 at 6-7 (citing Tr. 51-52, 323). Next, in support of

this finding, the ALJ cites (1) a September 2015 treatment record indicating that

Plaintiff "has not taken her blood pressure medication yet," a month after she was

advised to restart her blood pressure medication following an episode of syncope

(Tr. 331, 336); and (2) a September 2014 treatment record indicating Plaintiff was

not checking her blood sugars on a regular basis, and that her primary care provider referred her for a sleep evaluation, but she was a "no show for the appointment stating she just forgot and does not want to pursue a sleep study at this time." Tr. 25-26, 345. Plaintiff argues, respectively, that she was "reasonably hesitant" to take blood pressure medication following an emergency room visit for an episode of syncope; and that she "declined to undertake the rigors of [the sleep study] at the time." ECF No. 12 at 12. However, Plaintiff does not cite, nor does the Court discern, any documented evidence in the record to support Plaintiff's contention that she failed to comply with treatment recommendations for these reasons. Moreover, personal preference is not a sufficient reason to not comply with treatment recommendations. *See, e.g.*, *Molina*, 674 F.3d at 1113-14 (affirming an ALJ's discounting a claimant's testimony based on a resistance to treatment, where there was no evidence that the resistance was based on her impairments rather than her personal preference). Based on the foregoing, it was reasonable for the ALJ to rely on Plaintiff's failure to follow treatment recommendations as a reason to discredit her symptom claims. Finally, as to the fourth record cited by the ALJ to support this reasoning, Defendant concedes the ALJ erred because while Plaintiff did not follow recommendations to discontinue one medication in favor of another, "the ALJ did not address Plaintiff's statement that she was allergic to Spiriva and continued to use her Combivent." ECF No. 16

at 9 (citing Tr. 368). However, any error in considering this reason is harmless because, as discussed herein, the ALJ's consideration of Plaintiff's failure to follow treatment recommendations, and the ultimate credibility finding, was supported by substantial evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Third, the ALJ noted "the variety of inconsistencies in [Plaintiff's] alleged limits." Tr. 31. In evaluating credibility, the ALJ may consider inconsistencies in Plaintiff's testimony or between his testimony and his conduct. *Thomas*, 278 F.3d at 958-59; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (in making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation). Thus, despite Plaintiff's unsubstantiated argument that she had an "inability to articulate her impairments," it was reasonable for the ALJ to note that Plaintiff reported "problems lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, and seeing, but interestingly, she did not allege any physical problems in her application for benefits." Tr. 31 (citing Tr. 208). Moreover, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Here, Plaintiff reported in October 2013 that it was "impossible" for her to function "normal" on a daily basis even at home; her friends remind her

to take her medication; and she has impaired memory, concentration, and difficulty following instructions.  Tr. 31, 214-20.  However, the ALJ relied on the testimony of medical expert Dr. McKnight, to whom the ALJ granted significant weight, who testified that these limitations are contradicted by her own contemporaneous reports that she is able to handle money, pay bills, and use a checking account.  Tr. 31-32, 47, 217.  Similarly, the ALJ found it significant that Plaintiff claimed she "'just sleeps' and 'doesn't do anything,' which is inconsistent with her activities of daily living reported elsewhere (i.e. she is able to cook simple meals, do laundry, manage money, take a bus, uses a computer, and has friends); [and is] functioning okay at home."  Tr. 31, 216-18, 224-28, 278, 301, 308.  The ALJ also notes that Plaintiff's alleged limits in getting along with others in inconsistent with having friends that allow her to stay with them.  Tr. 32, 224-29.  Plaintiff argues the ALJ "appears to parse figurative and colloquial language as formal averments" in order to discredit Plaintiff's statements that she "just sleeps" and "doesn't do anything" as inconsistent with her activities.  ECF No. 12 at 13.  This argument is unsupported by citation to legal authority; nor does Plaintiff point to evidence in the record that the statements cited by the ALJ were intended by Plaintiff to be "figurative" or "colloquial."  Also, regardless of the manner in which Plaintiff's statements were intended, Plaintiff's daily activities were reasonably considered by the ALJ as inconsistent with her complaints of entirely disabling limitations.  *See*

*Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible for determining credibility"). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001)(citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted). Plaintiff argues the ALJ erroneously considered the opinions of examining psychologist John Arnold, Ph.D.; and examining provider Kyle D. Wood, MS, LLP (signed off by supervising psychologist Robert J. Devers, Psy.D.). ECF No. 12 at 14-17.

### 1. *John Arnold, Ph.D.*

In July 2015, Dr. Arnold examined Plaintiff and completed a psychological evaluation. Tr. 307-11. Dr. Arnold opined that had moderate limitations in nine categories of "basic work activities;" and marked limitations in her ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; (2) adapt to changes in a routine work setting; and (3) complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 309. Dr. Arnold rated the overall severity based on the combined impact of all the diagnosed mental impairments as "marked." Tr. 309. The ALJ granted Dr. Arnold's opinion little weight. Tr. 33. Because Dr. Arnold's opinion was contradicted by medical expert

Thomas McKnight, Ph.D., Tr. 46-56, and Robert Newhouse, M.D., Tr. 94-96, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Arnold's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found that Dr. Arnold's "conclusions are internally inconsistent." Tr. 33. Internal inconsistencies within a physician's report constitute relevant evidence when weighing medical opinions. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Bayliss*, 427 F.3d at 1216 ("discrepancy" between a treating provider's clinical notes and that provider's medical opinion is an appropriate reason for the ALJ to not rely on that opinion regarding the claimant's limitations). In support of this finding, the ALJ noted that Dr. Arnold "opined that thought process/content and concentration are not within normal limits, BUT in the next column, goes on to list the actual findings on exam and they are all within normal limits." Tr. 33 (emphasis in original). The "next column" referenced by the ALJ requires Dr. Arnold to provide "observation detail" if they determine a category is not within normal limits; but in this case, according to the ALJ, the observations listed by Dr. Arnold *are* within normal limits. See Tr. 311. Plaintiff argues that Dr. Arnold properly "addressed the degree of [Plaintiff's] functioning … finding that she had no clearly delusional content." ECF No. 12 at 15. First, the Court notes that Plaintiff does not challenge the ALJ's finding that Dr. Arnold's clinical notes do not support his

conclusion that Plaintiff's "concentration" was not within normal limits. Tr. 24-25, 33; *see Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing). Moreover, as correctly argued by Defendant, "Plaintiff's exception is misplaced because Dr. Arnold indicated that 'Devoid of clearly delusional content' was the reason for why he assessed Plaintiff's thought process and content as not within normal limits (Tr. 311), which therefore actually supported the ALJ's rejection of Dr. Arnold's opinion based on internally inconsistent conclusions." ECF No. 16 at 13. Plaintiff additionally argues that the ALJ "asserts without explanation" that Dr. Arnold's findings "merely contain a recitation of self-reported symptoms." ECF No. 12 at 15. However, the ALJ specifically noted that, "as indicated by the medical expert" Dr. McKnight, Dr. Arnold's diagnosis of bipolar disorder is "inconsistent with his notes of exam, as these do not set forth any of the criteria necessary under the DSM-V for making that diagnosis; rather the notes of exam merely contain a recitation of self-reported symptoms." Tr. 33, 53-54. Based on the foregoing, the inconsistencies between Dr. Arnold's findings and his recorded observations, was a specific and legitimate reason to reject his opinion.

Second, the ALJ noted that "the Department of Social and Health Services (DSHS) uses different rules and regulations to establish disability, so the same conclusions may not have been reached if applying only Social Security law and

regulation." Tr. 33. Although state agency disability rules may differ from Social

Security Administration rules regarding disability, it is not always apparent that the

differences in rules affect a particular physician's report without further analysis by

the ALJ. There may be situations where less weight should be assigned to a DSHS

medical opinion based on the differences in rules, but substantial evidence does not

support that finding here. Thus, standing alone, this is not a specific and legitimate

reason to reject Dr. Arnold's opinion. However, the error is harmless because the

ALJ's ultimate rejection of Dr. Arnold's opinion is adequately supported by

substantial evidence. *See Carmickle*, 533 F.3d at 1162-63. In particular, the ALJ

found that

> the evaluations conducted for DSHS are largely based on [Plaintiff's] self-
> reported symptoms and complaints (i.e., BDI and BAI self-reports), and in
> this case, the [Plaintiff] is not credible. Further, the evaluation forms
> completed during the DSHS evaluation was completed by checking boxes
> and contain few objective findings in support of the degree of limitation
> opined, particularly given the normal Trailmaking tests and mental status
> exam outlined herein.

Tr. 33. An ALJ may reject a physician's opinion if it is based "to a large extent"

on Plaintiff's self-reports that have been properly discounted as incredible.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In her reply brief,

Plaintiff generally contends that "Dr. Arnold's diagnosis and conclusions would

not be based on [Plaintiff's] self-report, but instead his diagnosis and conclusions

would be based upon his review of her medical records and his findings and

observations during the examination." ECF No. 17 at 4. However, the Court notes that Dr. Arnold indicated he did *not* review medical records; instead, his evaluation was based solely on the clinical interview and mental status examination. *See* Tr. 307. As correctly noted by the ALJ, the "notes of exam merely contain a recitation of self-reported symptoms," including the "BDI and BAI self-reports." Tr. 307-08; ECF No. 16 at 15 (noting the BDI and BAI tests are both a "21 item self-report questionnaire"). Moreover, the narrative results of the mental status examination, and the "Trailmaking tests," conducted by Dr. Arnold, were largely unremarkable; and Dr. Arnold failed to discuss how the results of these examinations supported the severe limitations assessed by Dr. Arnold, or indicated that Plaintiff was unable to work. Tr. 33, 308, 310-11. For all of these reasons, it was reasonable for the ALJ to conclude that Dr. Arnold's opinion was based in large part on Plaintiff's properly discounted subjective complaints. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a specific and legitimate reason to reject Dr. Arnold's opinion.

Finally, the ALJ found that Dr. Arnold's evaluation "was completed by checking boxes and contain[s] few objective findings in support of the degree of limitation opined, particularly given the normal Trailmaking tests and mental status exam." Tr. 33. An ALJ may permissibly reject check box reports that do not

contain any explanation of the bases for their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)( "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."). As an initial matter, the Court may decline to address this issue because it was not raised with specificity in Plaintiff's opening brief. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Moreover, the limitations assessed by Dr. Arnold are presented in check box form without further explanation; and, as a one-time examining provider, Dr. Arnold did not have an ongoing relationship with Plaintiff in order to lend support to his check box opinion. *Cf. Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (finding treating physician's check-box opinion was "based on significant experience with [Plaintiff] and supported by numerous records, and [was] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."). Accordingly, this was a specific, legitimate, and unchallenged reason to reject Dr. Arnold's opinion.

### 2. *Kyle Wood, M.S., L.L.P., and Robert J. Devers, Psy.D.*

In December 2013, Dr. Devers and Mr. Wood co-signed a "disability determination" that diagnosed Plaintiff with posttraumatic stress disorder and cyclothymic disorder; and noted she had difficulties with mood regulation, doesn't

function well in public, and has anxiety symptoms "which effect her interactions with people and in relationships." Tr. 303. The opinion concluded that "[b]ased on these difficulties it is unlikely that [Plaintiff] will be able to obtain or maintain gainful employment." Tr. 303. The ALJ granted this opinion "some weight." Tr. 32. Because the opinion was contradicted by medical expert Thomas McKnight, Ph.D., Tr. 46-56, and Robert Newhouse, M.D., Tr. 94-96, the ALJ was required to provide specific and legitimate reasons for rejecting this opinion.[2] *Bayliss*, 427 F.3d at 1216.

First, the ALJ found that "[w]hile Mr. Wood did have the opportunity to examine [Plaintiff], weight is limited due to the largely normal mental status exam." Tr. 32. A "discrepancy" between a treating provider's clinical notes and that provider's medical opinion is an appropriate reason for the ALJ to not rely on that opinion regarding the claimant's limitations. *See Bayliss*, 427 F.3d at 1216;

---

[2] The ALJ specifically noted that supervising psychologist Dr. Devers signed off on the opinion of Mr.Wood, who is a limited license psychologist and therefore is not an acceptable medical source. The Court will consider the evidence in the light most favorable to the Plaintiff and apply the standard for rejecting the opinion of an acceptable medical source rather than the standard applicable to the opinion of a non-acceptable medical source.

*Bray*, 554 F.3d at 1228 (ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings). Plaintiff argues the ALJ improperly disregards Plaintiff's labile presentation, and "difficulty" with information and calculation. ECF No. 12 at 16. However, the ALJ's decision noted the mental status exam was only "largely" normal, and despite Plaintiff's arguments to the contrary, the ALJ specifically acknowledged Plaintiff's report that she was anxious and depressed, and Mr. Wood's observation that Plaintiff's affect during the interview was labile. Tr. 24, 302. Moreover, the ALJ noted that "on exam," Plaintiff's clothing and hygiene was within normal limits, motor activity was normal, self-esteem was reportedly low, she denied current thoughts or feelings of self-harm, memory was normal, and she was able to do serial 7s and do simple math. Tr. 24, 302-03. Based on the foregoing, and regardless of evidence that could be interpreted as favorable to the Plaintiff, the evidence is susceptible to more than one rational conclusion, and therefore the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. The inconsistency between the "largely" normal mental status exam performed by Mr. Wood, and his opinion that Plaintiff would not be able to obtain or maintain gainful employment, was a specific and legitimate reason to grant the opinion only "some" weight.

Second, the ALJ found the weight accorded to Mr. Wood and Dr. Devers' opinion was limited based on the "inconsistencies of [Plaintiff's] claims in that exam (i.e. she 'just sleeps' and 'doesn't do anything') compared with her activities of daily living reported elsewhere (i.e. she is able to cook, manage money, uses a computer, take the bus, and has friends), reports that she is functioning okay at home, or by treatment records that indicate overall mood and sleep was improved on medication." Tr. 32-33. However, "[w]hen explaining his [or her] reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion, rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. Here, the ALJ failed to state with requisite specificity how the inconsistencies in Plaintiff's reported daily activities throughout the record, as discussed above regarding Plaintiff's symptoms claims, is a specific and legitimate reason to reject Mr. Wood and Dr. Devers' opinion that Plaintiff would be unable to obtain or maintain gainful employment. However, as discussed above, the ALJ offered an additional reason, supported by substantial evidence, for rejecting Mr. Wood and Dr. Devers' opinion. *See Carmickle*, 533 F.3d at 1162-63. Moreover, the Court notes that any error would be harmless because Plaintiff failed to identify

any limitations specifically assessed by Mr. Wood and Dr. Devers' that were not properly accounted for in the assessed RFC. *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination"); *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"). For all of these reasons, the Court finds the ALJ properly granted only "some" weight to Mr. Wood and Dr. Devers' opinion.

### 3. Thomas McKnight, Ph.D.

Finally, Plaintiff generally argues that "[r]ather than properly considering the opinions of examining sources, the ALJ relied on the opinion of non-examining consultants." ECF No. 12 at 16. However, while an ALJ generally gives more weight to examining sources, than to nonexamining physicians such as medical expert Dr. McKnight; nonexamining physician's opinions may nonetheless constitute substantial evidence if they are, as noted by the ALJ in this case, consistent with other independent evidence in the record. Tr. 32; *Thomas,* 278 F.3d at 957; *Orn,* 495 F.3d at 632–33. Additionally, Plaintiff contends, without citation to the record or legal authority, that for Dr. McKnight's "thesis to be

accepted that would mean" the treating and examining providers "would have had to be incompetent and unable to diagnose" her mental health conditions. ECF No. 12 at 16-17. Plaintiff goes so far as to assert that Dr. McKnight is "incompetent and unable to read and understand what is before him in the records." ECF No. 12 at 17. However, as noted by the Defendant, medical expert Dr. McKnight "did not indicate that these medical sources were incompetent or unable to conduct the functions that Plaintiff points to. Instead, the point that Dr. McKnight made was that the medical sources relied on Plaintiff's self-reports, and Plaintiff does not present any specific argument demonstrating that Dr. McKnight erred in this regard or that Dr. McKnight was 'incompetent and unable to read and understand what is before him in the records' as she has alleged." ECF No. 16 at 17. Thus, the Court declines to consider this pejorative and unsupported argument. The Court finds the ALJ properly relied on Dr. McKnight's medical expert opinion, which was granted significant weight because it was based on "the objective and clinical findings contained in the medical evidence of record." Tr. 32.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and

convincing reasons to discount Plaintiff's symptom testimony, and properly

weighed the medical opinion evidence. After review the court finds the ALJ's

decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 16, is
    **GRANTED**.

The District Court Executive is hereby directed to enter this Order and

provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE**

the file.

**DATED** August 23, 2018.

                              _____*s/Fred Van Sickle*_____
                                      Fred Van Sickle
                              Senior United States District Judge